Everett BUDDENBERG, Appellant

v.

Tricia BUDDENBERG, Appellee.

No. 2009–CA–000274–MR.

Court of Appeals of Kentucky.

Feb. 5, 2010.

Patrick E. Moeves, Fort Wright, KY, for appellant.

Erin M. Butcher, London, KY, for appellee.

Before NICKELL and WINE, Judges; HARRIS,[1] Senior Judge.

## OPINION

WINE, Judge.

Everett Buddenberg ("Everett") appeals from a Domestic Violence Order ("DVO") entered by the Laurel Family Court prohibiting him from any contact with his wife, Tricia Buddenberg ("Tricia"), and their three children. We agree with Everett that there was no evidence that he presented any imminent danger to the children. Hence, we must set aside the portion of the DVO relating to the chil-dren. We will not disturb the remaining portions of the DVO. We further find that there was insufficient evidence to support the trial court's decision to hold Everett in criminal contempt for his violation of a prior Emergency Protective Order ("EPO"). Therefore, we must vacate the contempt order.

The essential facts of this action are not in dispute. Everett and Tricia Buddenberg were married in 1998. They have three children, all girls, who are ages 10, 6 and 4. Immediately prior to the filing of the petition, the parties resided in Massillon, Ohio. In mid-December 2008, Tricia left the marital residence with the children and traveled to Laurel County, Kentucky.

On December 15, 2008, Tricia filed a petition for an emergency protective order on behalf of herself and the children.[2] In the petition, she alleged

> Petitioner [Tricia] has fled from the Respondent [Everett] due to the fact of threats that have been made to her. The respondent has a criminal complaint regarding inappropriate communication with a 13 year old female. The respondent admitted to past sexual molestation with siblings. He also has been terminated due to inappropiate (sic) internet contact with a young female child. Petitioner fears for the safety of her own daughters and she fears what he may do. He also threatened that she would regret leaving.

The trial court granted the petition and scheduled a hearing for December 22, 2008. The court rescheduled the hearing and extended the EPO because Everett was not served. Following a hearing on January 5, 2009, the trial court granted a

---

1. Senior Judge William R. Harris sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. Contrary to Everett's brief, the petition filed by Tricia on December 15, 2008, includes a checkmark for the line, "Petitioner, on behalf of minor child(ren), requests ...".

DVO on behalf of Tricia and the children. The court also awarded temporary custody of the children to Tricia and directed that Everett have no contact due to his past misconduct. However, the court recognized that there was a pending dissolution action in Stark County, Ohio, and specified that its custody and visitation orders were subject to modification by a court of competent jurisdiction. Finally, without making specific findings, the trial court held Everett in contempt of court for his "failure to follow through with the EPO". Further the court held, "It is clear to the court you violated the order by having contact in violation of the order." The court's written order simply stated, "Find Resp. in contempt in contempt (sic) in viol. of EPO. . . ." As punishment for the contempt, the trial court sentenced Everett to 90 days imprisonment. The court directed that Everett serve 10 days, and conditionally discharged the balance of the sentence.

Thereafter, Everett filed a timely motion to set aside the contempt finding and the DVO. He asserted there was insufficient evidence that he had been personally served with the EPO at the time he made the phone contact with Tricia and the children and further that there was no evidence he had directed a third party to contact his children. He also argued that there was no evidence of domestic violence or abuse involving Tricia or the children, that the three year period for the DVO was excessive, and that he should receive visitation with the children while dissolution proceedings are pending in Ohio. Without making additional findings, the trial court denied Everett's motion and affirmed its original order on January 15, 2009.

■ On appeal, Everett does not challenge the entry of the DVO with respect to Tricia. However, he argues that there was no evidence warranting the entry of the DVO with respect to the children. He also argues that the extension of the DVO for three years is unreasonable and unwarranted given the pending dissolution action in Ohio. Finally, he argues that the trial court erred by holding him in contempt because he did not attempt to contact Tricia or the children after he was personally served with the EPO.

■ The first issue turns on the sufficiency of the evidence supporting entry of a DVO protecting the children. Kentucky Revised Statute ("KRS") 403.750 permits a court to enter a DVO following a hearing "if it finds from a preponderance of the evidence that an act or acts of domestic violence and abuse have occurred and may again occur[.]" Under the preponderance standard, the court must conclude from the evidence that the victim "was more likely than not to have been a victim of domestic violence." *Commonwealth v. Anderson*, 934 S.W.2d 276, 278 (Ky.1996). On appeal, we are mindful of the trial court's opportunity to assess the credibility of the witnesses, and we will only disturb the lower court's finding of domestic violence if it was clearly erroneous. Kentucky Rules of Civil Procedure ("CR") 52.01; *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky.1986). But with regard to the trial court's application of law to those facts, this Court will engage in a *de novo* review. *Keeney v. Keeney*, 223 S.W.3d 843, 848–49 (Ky.App.2007).

There are allegations in the record that Everett engaged in "inappropriate" contact with a number of juvenile girls. Everett admitted to having recently sent inappropriate text messages to a 13–year old girl who lived nearby.[3] A police report

3. The initial text message included a com-    ment about a tight shirt the girl had been

was filed and a court order was entered restraining him from any further contact with that child. Prior to that, in 2005, Everett was fired from his employment due to inappropriate use of the internet at work. His conduct involved viewing of pornography and sending inappropriate "chat" messages to juvenile girls. Everett also admitted that he had engaged in inappropriate contact with his sisters while he was a teenager—some 25 years earlier.

We agree with the trial court that Tricia has legitimate concerns about Everett's conduct. However, we cannot find that his behavior meets the standard for granting a DVO with respect to the children. KRS 403.720(1) defines "domestic violence and abuse" as "physical injury, serious physical injury, sexual abuse, assault, or *the infliction of fear of imminent* physical injury, serious physical injury, *sexual abuse,* or assault between family members … [.]" (*Emphasis added*). There are no allegations that Everett has ever engaged in any inappropriate conduct toward his daughters. Everett's actions involving other children, disturbing as they are, do not rise to the level suggesting that he presents any imminent danger to his own children. Any long-term risk that Everett may offend with his own children would be better addressed as part of the custody proceedings in the dissolution action.

We note, however, that the trial court had jurisdiction to make a custody award to Tricia "if the child is present in this state and … it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." KRS 403.828(1). *See Bissell v. Baumgardner,* 236 S.W.3d 24, 30–31 (Ky.App.2007). Everett does not contest the entry of the DVO with respect

to Tricia. Furthermore, the trial court clearly specified that its custody order was subject to modification by a court with competent jurisdiction. Thus, while the evidence did not warrant entry of the DVO with respect to the children, we will not disturb the trial court's custody and visitation orders.

■ Everett next argues that the three-year duration of the DVO was excessive under the circumstances. As noted above, there were no allegations that Everett ever attempted to engage in any physical or sexual abuse of Tricia or the children. Furthermore, the only basis for entry of the protective order with respect to Tricia was Everett's veiled threat that Tricia would "regret" leaving. He also notes that the parties reside five to six hours away from each other and there is a pending dissolution action in Ohio.

■ We recognize the "enormous significance" which the entry of a DVO has on the parties involved. *Wright v. Wright,* 181 S.W.3d 49, 52 (Ky.App.2005). Furthermore, "[i]t is important to remember that a person subject to a DVO is placed under significant restrictions." *Kingrey v. Whitlow,* 150 S.W.3d 67, 70 (Ky.App.2004) (*Knopf, J., concurring*). Thus, a trial court should not lightly enter a DVO against the weight of the evidence. *Wright, supra* at 53.

However, Everett does not contest the trial court's finding that his conduct toward Tricia amounted to an act of domestic violence or abuse. Once the court made this finding, it had the authority to fix a period for the DVO to be effective "not to exceed three (3) years." KRS 403.750(2). The statute does not specify any particular factors in determining the

wearing when she visited the Buddenberg home. Subsequent messages were also sent,

but there was no evidence concerning the content of those messages.

duration of the DVO. Nor did Everett request that the trial court make any specific findings concerning the duration of the DVO. Given that Everett had just filed a dissolution action in Ohio, the trial court may have reasonably concluded that the DVO should be entered for the full three-year period to allow the parties to resolve their issues in the appropriate forum. While the evidence might have supported a shorter duration for the DVO, we conclude that the length of the DVO is within the sound discretion of the trial court. We cannot find that the trial court abused its discretion by directing that the DVO remain in effect for the full three years.

■ Finally, Everett argues that the trial court erred by holding him in contempt for violation of the EPO. In this case, the trial court imposed a punishment on Everett for his violation of the no-contact provisions of the EPO. Thus, the court found Everett to be in criminal contempt. *Commonwealth v. Burge*, 947 S.W.2d 805, 808 (Ky.1997). A court may impose punishment for criminal contempt only if proof exists to show the defendant "had knowledge of a valid order which prohibited the conduct in question and that he intentionally violated it." *Butts v. Commonwealth*, 953 S.W.2d 943, 944 (Ky. 1997), *overruled on other grounds by Commonwealth v. McCombs*, 304 S.W.3d 676, 2009 WL 735794 (Ky.2009) (*pet. for reh. pend.*).

■ The trial court's exercise of its contempt powers will not be disturbed absent an abuse of its discretion. *Meyers v. Petrie*, 233 S.W.3d 212, 215 (Ky.App.2007). The test for abuse of discretion is "whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky.2000). A trial court abuses its discretion when its decision rests on an error of law (such as the application of an erroneous legal principle or a clearly erroneous factual finding), or when its decision cannot be located within the range of permissible decisions allowed by a correct application of the facts to the law. *See Miller v. Eldridge*, 146 S.W.3d 909, 915 n. 11 (Ky.2004).

■ While our review of the trial court's exercise of its contempt powers is deferential, the trial court's decision must be supported by sufficient evidence in the record to allow for meaningful appellate review. Here, the trial court did not make any specific findings supporting its conclusion that Everett had intentionally violated the no-contact provisions of the EPO.

■ Furthermore, in the case of criminal contempt, all elements, including willful disobedience, must be proven beyond a reasonable doubt. *Brockman v. Commonwealth*, 185 S.W.3d 205, 208 (Ky.App.2005). As an initial matter, there is no clear evidence in the record concerning when Everett was personally served with the EPO. The parties agree that he had not been served by December 22, 2008, when the first hearing was scheduled. The record shows that a copy of the re-issued EPO was faxed to the Stark County (Ohio) Sheriff's Office on December 24, 2008, but there is no additional information about service. At the hearing, Everett initially testified that he was served with the EPO on December 29, 2008. He quickly changed this testimony, stating that he was not served until December 30 or 31. Everett submitted a self-prepared "call log" which noted that he attempted to call the children during the evening hours of December 29 and 30.

Everett insisted that he did not attempt to call the children after being served. Given Everett's contradictory testimony,

the trial court could have chosen to believe that Everett made his last two attempts to contact the children after he was served with the EPO. However, the trial court did not make a finding that Everett had been served when he made these attempted contacts. KRS 403.785(5) states that an EPO "shall become effective at the time of personal service or when the respondent is given notice of the existence and terms of the order by a peace officer or the court, whichever is earlier." In this case, there was no definitive evidence that Everett had been served before he attempted to call the children on December 29 and 30. Without such evidence, the trial court could not find beyond a reasonable doubt that Everett willfully violated the terms of the EPO.

Furthermore, we are not convinced that the January 3, 2009, contact by Everett's mother would amount to a willful violation of the EPO. The EPO specifies that "the Respondent be restrained from any communication with the above named Petitioner." We recognize that such orders are typically interpreted to preclude both direct and indirect contact, including contact by third parties. However, the order itself only prevented Everett from contacting Tricia or the children.

We also note that Tricia informed the trial court on December 22, 2008, that she expected that Everett's mother and stepfather would attempt to call the children. Tricia stated that she had no objection to such contact. Under these circumstances, we cannot agree that Everett willfully violated the EPO, even if he had asked his mother to make the January 3 call.

Accordingly, the Domestic Violence Order entered by the Laurel Circuit Court on January 5, 2009, is affirmed with respect to the protective order entered on behalf of Tricia and the custody and visitation provisions involving the children. However, the DVO is vacated with respect to the protective order entered on behalf of the parties' children. The trial court shall reissue the DVO with restrictions that are consistent with this opinion. It is further ordered that the contempt order entered against Everett is vacated.

ALL CONCUR.