RENDERED:  FEBRUARY 26, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0530-ME

RICARDO COLIN                                                                    APPELLANT


APPEAL FROM KENTON FAMILY COURT
v.          HONORABLE CHRISTOPHER J. MEHLING, JUDGE
ACTION NO. 20-D-00041-001


AHOLIBHAMA
HERNANDEZ-FLORIAN                                                       APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  LAMBERT, MAZE, AND L. THOMPSON, JUDGES.

MAZE, JUDGE:  Ricardo Colin (Colin) appeals from a domestic violence order

(DVO) entered by the Kenton Family Court against him and in favor of Aholibama

Hernandez-Florian (Hernandez).[1]  He argues that the family court's findings were

---

[1] The Appellee's name appears to be misspelled in the body of the notice of appeal.  We have adopted the spelling from her petition and the record below.

not supported by substantial evidence and that the court omitted specific findings required by statute. We conclude that the family court's findings were sufficient and supported by substantial evidence. Hence, we affirm.

On January 31, 2020, Hernandez filed a petition for an emergency protective order (EPO) against Colin. Based upon the allegations in the petition, the family court entered the EPO and scheduled a hearing for February 12, 2020. At the hearing, Hernandez testified that she and Colin had been in a relationship for almost five years and had two children together. Hernandez also testified that, early in the morning hours of January 31, she and Colin argued about a text which he received from another woman. Eventually, Colin left the bedroom and went to sleep elsewhere in the house.

Later that morning while driving to work, Colin informed Hernandez that he had taken physical possession of her phone and that, going forward, they would not use their phones outside of each other's company. When the two stopped for gas, Colin returned Hernandez's phone but told her that he intended to keep it while she was at work. Thereafter, Hernandez refused to give her phone back to Colin. Another argument ensued, and Hernandez tried to get out of the vehicle. Hernandez testified that Colin followed her, struck her twice in the face, and then physically forced her back into the car.

Colin then drove Hernandez back to their home. Hernandez testified that he threatened to hurt her if she ever tried to do that again. A short time later, Hernandez fled the home and called the police. The police interviewed both parties but did not make any arrest or file a report.

Hernandez also testified that, on other occasions, Colin used drugs in front of the children; destroyed property; beat the family dog in front of her and the children; threatened her and the children with a knife; threatened to kill himself; and threatened to call immigration on Hernandez. Hernandez also testified that Colin told her that he had murdered two people when he was a teenager. Based upon these actions and Colin's recent conduct toward her, Hernandez stated that she feared for her life and the lives of her children. But on cross-examination, Hernandez admitted she had contacted Colin's mother after the EPO was entered to request that Colin pick up the children for his scheduled visitation.

In his testimony, Colin admitted that the parties had argued about monitoring each other's phone use. He also admitted to taking Hernandez's phone and carrying her back to the car, but he denied striking her. Rather, Colin testified that Hernandez struck him and scratched his face, and he only restrained her to stop her from hurting him and to get her back in the car. Colin denied using drugs around the children or threatening the family. He also stated that he never hurt the family dog, and he asked to bring in a witness to confirm that he had borrowed

money to pay for the dog's veterinary bills. The family court denied the request, stating that it would only consider the events occurring on January 31.

Based on Hernandez's testimony, the trial court granted the DVO. Thereafter, Colin filed a CR[2] 59.05 motion requesting a new hearing. He argued that Hernandez's allegations were not credible and that the family court failed to make specific findings regarding any injury which Hernandez may have suffered. Colin also requested additional findings pursuant to CR 52.04. Following a hearing, the family court denied the motion. This appeal followed.

KRS[3] 403.740(1) provides that "if a court finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur, the court may issue a domestic violence order . . . ." The preponderance of the evidence standard is met when sufficient evidence establishes that the alleged victim was "more likely than not to have been a victim of domestic violence." *Commonwealth v. Anderson*, 934 S.W.2d 276, 278 (Ky. 1996). KRS 403.720(1) defines "[d]omestic violence and abuse" as "physical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple[.]" As an

---

[2] Kentucky Rules of Civil Procedure.

[3] Kentucky Revised Statutes.

appellate court, we review the family court's issuance of a DVO to determine "whether the court's findings were clearly erroneous or . . . it abused its discretion." *Holt v. Holt*, 458 S.W.3d 806, 812 (Ky. App. 2015) (citation omitted). In making this determination, we must be mindful of the family court's opportunity to assess the credibility of the witnesses. CR 52.01. However, this Court will engage in a *de novo* review with regard to the family court's application of law to those facts. *Buddenberg v. Buddenberg*, 304 S.W.3d 717, 720 (Ky. App. 2010).

Colin first argues that the family court abused its discretion by limiting the scope of its inquiry to the January 31 incident. He contends that Hernandez's allegations regarding other acts of domestic violence were not credible. He further argues that the family court denied him an opportunity to present witnesses rebutting these allegations, which in turn would have cast doubt on Hernandez's credibility about the January 31 incident. For this reason, Colin asserts that the family court deprived him of due process by limiting the scope of his inquiry into Hernandez's allegations.

As previously noted, this Court is not authorized to revisit the family court's determinations regarding Hernandez's credibility. *See Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008). But it suffices to say that there was evidence supporting the family court's determination that Hernandez was more credible about the January 31 incident. Indeed, Colin's account of the January 31 incident

does not deviate significantly from that of Hernandez. He also admits that he tried to force Hernandez to give up her phone. He admits that she tried to flee from the car and that he forced her back into the vehicle. Colin testified to other circumstances explaining these actions. But none of his proposed witnesses could offer any first-hand account of the January 31 incident.

The family court concluded that this incident alone was sufficient to constitute an act of domestic violence. As a result, the court determined that it would not consider Hernandez's other allegations. Because it did not rely on these other allegations, we conclude that the family court did not deprive Colin of due process by denying Colin's request to call other witnesses to rebut Hernandez's testimony about the other alleged incidents.

Colin also argues that the family court failed to consider text messages which Hernandez sent to his mother asking if Colin could watch the children. He contends that these messages undercut Hernandez's claim that she feared his behavior around the children. However, Hernandez did not seek a DVO for the benefit of her children, and neither the EPO nor the DVO prohibited Colin from having contact or visitation with the children. Consequently, the family court was not obligated to consider Hernandez's contact with Colin's mother regarding visitation as discounting her fear of him.

Finally, Colin alleges that the family court omitted specific findings of fact required by KRS 403.740. He contends that the family court was required to identify the specific facts supporting its findings that domestic violence had occurred and may again occur. But on its docket entry, the family court wrote that it was relying on the interactions between Colin and Hernandez in the vehicle. Specifically: that they were in the car together; she tried to get out; he put her back in the car; he struck her; and the matter concerned Colin's demand that Hernandez surrender her phone. The family court specifically incorporated these findings in in the DVO and in its order denying Colin's CR 59.05 and CR 52.04 motions. We conclude that these written findings are sufficient when read in conjunction with the findings made on the DVO form. *See Robbins v. Meeker*, No. 2016-CA-000302-ME, 2017 WL 242671, at \*2 (Ky. App. Jan. 20, 2017). Under the circumstances, we conclude that the family court did not deprive Colin of due process and that its factual findings supporting the DVO were sufficient and supported by substantial evidence.

Accordingly, we affirm the DVO entered by the Kenton Family Court.

ALL CONCUR.

BRIEF FOR APPELLANT:

Marvin A. Knorr, III
Covington, Kentucy

BRIEF FOR APPELLEE:

Robert Gary DeFusco
Covington, Kentucky