RENDERED: FEBRUARY 24, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0804-ME

BRIAN DOUGLAS                                                           APPELLANT


                        APPEAL FROM JEFFERSON CIRCUIT COURT
v.                    HONORABLE SHELLY M. SANTRY, JUDGE
                        ACTION NO. 22-D-501940-001


SHELBY CARTER                                                           APPELLEE


                                    OPINION
                                   AFFIRMING

                              ** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CETRULO AND ECKERLE, JUDGES.

ECKERLE, JUDGE: Brian Douglas (Douglas) appeals from a domestic violence order (DVO) entered by the Jefferson Family Court in favor of Shelby Carter (Carter). We conclude there was substantial evidence to support the Family Court's findings and that its credibility determinations were not clearly erroneous. Hence, we affirm.

On June 13, 2022, Carter filed a petition for an order of protection against Douglas. In the affidavit supporting the petition, Carter alleged that, on June 12:

> An argument occured [*sic*]. I tried to leave the home so the argument wouldn't escalate. Brian Douglas used his fore arm [*sic*] on my neck to push me against the wall. He used his fore arm [*sic*] to choke me and threw me on the ground. Then continued to hit me with his fore arm [*sic*]. During this my head was hit on the wall and I have scrapes on my knees. Prior to today, Brian was served eviction papers to vacate my home by July 1st. Brian Douglas has also been following me and using devices in the home to record conversations without my knowledge. I've been made aware that a gun has been purchased and is hidden in the home. I'm fearful for my safety and I'm fearful that he will take our child and leave the state. Brian Douglas has made threats of harming me to family members. He has also made threats of hurting friends of mine.

Based on the petition, the Family Court granted an emergency protective order (EPO) to Carter and the parties' child. The matter proceeded to a hearing on June 28. At that hearing, the Family Court read the petition into the record, after which Carter adopted its contents under oath. Carter testified that she and Douglas had been together for eight years and have a child together, but they were never married.

About nine months before the filing of the petition, Carter informed Douglas that she wanted to end the relationship. Carter testified that, since that time, there has been constant arguing. She stated that Douglas' behavior has been

erratic, and he has used physical force against her. Carter testified that a similar incident occurred around the beginning of 2022, during which Douglas pushed her up against a wall.

Carter further testified that Douglas told her that she was being followed, and he had photos of her. He specifically stated that he had her followed to Elizabethtown, and he identified specific places she had been. Douglas also told her that he had been recording her conversations in the home, and he would send those recordings to her family and friends. He stated that he knew people who could hurt her or her friends. In May of 2022, Carter sent an eviction letter to Douglas, giving him until July 1 to vacate the residence. The parties rotated living in the house and staying with the child on weekends.

On Sunday, June 12, Carter got off work and returned home with her mother. Carter's sister arrived with their child shortly afterward. Later that evening, Carter texted Douglas to ask about the television. Douglas arrived and they got into the argument. She stated that she found empty beer bottles and alcohol containers around the house. The physical altercation occurred when Carter attempted to leave the house. Douglas stated that he was taking the child and was not going to return him. Carter called the police while Douglas and the child remained outside. Douglas was shouting and throwing water bottles in the yard. Carter stated that her knees were scraped and bruised, and she offered photos

of the injuries. Carter also showed her injuries to the Family Court. Their child was present during this incident.

With regard to the gun, Carter stated that Douglas owned two guns during the relationship, but he had given those guns away. However, she learned that Douglas purchased a gun after she asked him to leave the home. Carter stated that family members had advised her that he had the gun hidden in the home. He has made statements that he would break her jaw. He regularly uses alcohol, and he admitted to drug use in the past. She stated that he has repeatedly come to her workplace. Carter still had concerns that Douglas was going to take their child because he was not originally from Kentucky and has no family here.

On cross-examination, Carter clarified that she had not filed an eviction action, but her attorney sent him a letter directing him to leave. She did not have any concerns about Douglas' alcohol or drug use, and she was not afraid of Douglas hurting the child. She was aware that Douglas was looking into a custody action, and she became aware of that possibility around the beginning of June.

Douglas' counsel introduced the police report from the June 12 incident into the record. The police report states that the incident involved a "rapidly-escalating verbal altercation," and that "[n]o person involved had any complaints of injuries." No charges arose from the incident. Carter stated that she

told the police of injury to her knees. On re-direct, Carter denied taking out the EPO to get Douglas out of the house or to affect a potential custody action.

Carter's mother, Carol Busan, testified that Carter contacted her on the evening of June 12. Carter was crying and asked her to call the police. Busan went to the house and saw Douglas in the driveway speaking to the police officer. Busan stated that Carter's knees were red and swollen. Busan stated that Carter told her about the incident and prior incidents, but Busan had never witnessed the alleged abuse. Carter took the pictures while the officers were on the scene. On cross-examination, Busan stated she had not noticed any injuries to Carter's knees earlier that day.

Douglas testified that he got into an argument with Carter about removing his possessions from the house. He stated that the situation earlier that day was tense but never violent. He testified that he received Carter's text about the television and went back to the house. As he was trying to leave, Carter stated she wanted to leave. Douglas stated that Carter tried to prevent him from leaving. She fell to the ground than and then claimed he hit her. Douglas went back in the house, retrieved the child, and then waited for the police to arrive. He stated that he had not been drinking that day. He admitted that he previously owned a gun but stated that he did not currently own one.

On cross-examination, he denied any physical altercation with Carter. He also denied making any threats. He was asked about a text he shared with Carter's sister in which he complained about the man who Carter was seeing. In the text, he stated, "I promise you guys that if she brings that piece of sh*t around [the child] I will kill him." The text was followed by a picture of a handgun. Douglas stated that he did not own the gun in the picture, and that the picture was related to an earlier conversation. On re-direct, Douglas stated he took the picture from the internet, and that the conversation involved hobbies. Douglas' counsel introduced a copy of the text message and photo of the gun.

Following this testimony, the Family Court entered the DVO on behalf of Carter but not the child. The Court found that an act of domestic violence occurred and may occur again. The Court entered the DVO for one year, providing that Douglas was to have no contact and remain at least 500 feet away from Carter. The Court directed that Douglas vacate the residence and not possess any firearms. The Court noted that any issues relating to the child would be resolved in the custody action. Douglas now appeals from the entry of the DVO.

KRS[1] 403.740(1) provides that "if a court finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur,

---

[1] Kentucky Revised Statutes.

the court may issue a domestic violence order. . . ." The preponderance of the evidence standard is met when sufficient evidence establishes that the alleged victim was "more likely than not to have been a victim of domestic violence." *Caudill v. Caudill*, 318 S.W.3d 112, 114 (Ky. App. 2010). KRS 403.720(1) defines "[d]omestic violence and abuse" as "physical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple[.]"

As an appellate court, we review the Family Court's issuance of a DVO to determine "whether the court's findings were clearly erroneous or . . . it abused its discretion." *Holt v. Holt*, 458 S.W.3d 806, 812 (Ky. App. 2015) (citation omitted). *See also Caudill,* 318 S.W.3d 114-15. A court's findings of fact are clearly erroneous only if they are unsupported by substantial evidence; that is, evidence sufficient to induce conviction in the mind of a reasonable person. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). However, this Court will engage in a *de novo* review with regard to the Family Court's application of law to those facts. *Buddenberg v. Buddenberg*, 304 S.W.3d 717, 720 (Ky. App. 2010).

Douglas argues that there was no factual basis to support the Family Court's finding that an act of domestic violence occurred and may again occur. He focuses on the absence of any testimony or witnesses to corroborate Carter's

testimony. But as trier of fact, the Family Court has the right to believe the evidence presented by one litigant in preference to another. *Bissell v. Baumgardner*, 236 S.W.3d 24, 29-30 (Ky. App. 2007). Furthermore, this Court must be mindful of the Family Court's opportunity to observe and assess the credibility of the witnesses. CR[2] 52.01.

In this case, the Family Court clearly found Carter's testimony about the June 12 incident to be more credible than Douglas. The Family Court also accepted her testimony about the prior incident and threats. While Douglas complains that the photo of the gun was "taken out of context," the Family Court found that evidence relevant to establish both the prior threat and that acts of domestic violence may again occur. In light of the testimony as a whole, there was substantial evidence to support the Family Court's credibility determinations.

The Family Court's factual findings were based on those determinations. Under the circumstances, we find substantial evidence to support those findings. Therefore, the Family Court did not abuse its discretion in entering the DVO against Douglas.

Accordingly, we affirm the DVO entered by the Jefferson Family Court.

---

[2] Kentucky Rules of Civil Procedure.

ALL CONCUR.

BRIEF FOR APPELLANT:        BRIEF FOR APPELLEE:

Derrick L. Harris             Katie Brophy
Lexington, Kentucky         Louisville, Kentucky