RENDERED:  MAY 24, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1263-ME

ALLISON DAWN WILSON                                                  APPELLANT

v.           APPEAL FROM SHELBY CIRCUIT COURT
          HONORABLE S. MARIE HELLARD, JUDGE
          ACTION NO. 21-D-00090-002

GREGORY LOWELL WILSON                                                  APPELLEE

OPINION
VACATING IN PART

** ** ** ** **

BEFORE:  CETRULO, GOODWINE, AND A. JONES, JUDGES.

GOODWINE, JUDGE:  Allison Dawn Wilson ("Allison") appeals from an order of the Shelby Circuit Court denying her CR[1] 60.02 motion to alter, amend, or vacate a domestic violence order ("DVO") entered in favor of Gregory Lowell Wilson ("Gregory") and the parties' minor children.  After carefully reviewing the record and applicable law, we vacate in part.

---

[1] Kentucky Rules of Civil Procedure.

## BACKGROUND

On May 24, 2023,[2] Gregory filed a Petition for Order of Protection in the Shelby Circuit Court seeking protection for himself and the parties' two minor children. While the parties' divorce was pending, on May 21, 2023, Gregory alleged he and Allison had an argument that escalated to Allison committing an act of domestic violence against him. Record (R.) at 2. He alleged that Allison was supposed to vacate their shared residence by July 4, 2023, but during the argument, Allison said she would not leave if she was not ready. *Id.* Gregory then got the parties' two children ready to leave the house to go to his dad's house for dinner. Gregory stated he told Allison she needed to vacate the house by July 4 and started to leave. *Id.* Then Allison "struck [Gregory] on the side of the face and back of the head. The children were present," but Gregory was "not sure if they saw the assault." *Id.* Gregory tried to give Allison "the benefit of the doubt and did not file an EPO or press charges" on the day of the incident. *Id.* He alleged that in the days after the incident, Allison was "combative and [had] been talking negatively about [him] to the children." *Id.* Gregory further alleged he was concerned Allison's behavior would "escalate and more violence [would] be used against" him. *Id.*

---

[2] Though Gregory filed his petition in 2023, the case number is No. 21-D-00090-002. CourtNet indicates Allison filed a DVO petition against Gregory in 2021 in No. 21-D-00090-001, but no other documents were filed under that trailer.

The family court issued a protective order summons, but an emergency protective order was not entered. On June 7, 2023, the family court held a hearing, and Gregory and Allison each appeared *pro se* and testified. Gregory testified that this was the first instance of Allison committing an act of physical abuse against him. He testified they were arguing over signing the divorce settlement agreement, and Allison hit him with the door and then hit him. Gregory also testified that he found out later that the parties' daughter saw Allison hit him. He said that Allison hit him once before back when they were dating, but there were no other instances of physical violence.

Allison testified that she was defending herself from Gregory while they were arguing. She said the kids went outside to the car. She tried to follow them, but Gregory blocked her. Allison tried to close the door on him to get him out of the doorway. The parties continued to argue, and Allison reached across and swiped at Gregory's face. Allison believed the parties' son did not see her hit Gregory because he told his therapist the argument made him uncomfortable, but he was over by the car when it happened.

At the conclusion of the hearing, the family court orally ruled that an act of domestic violence had occurred. Regarding the children, the family court found, "I'm concerned about the safety of the children, if you're unable to control your temper like this and have these bouts in front of the children." Video Record

(V.R.) 6/7/23 at 12:00:17-29. The family court further stated: "You need to understand how domestic violence affects children. It's not a pleasant thing for a child to suffer through. You already indicated that your child has talked about it in therapy. I'm gonna list the children as protected persons under this order." *Id.* at 12:00:36-52. The family court ordered the parties to talk to the Cabinet for Health and Family Services worker about this case and ordered Allison to get a mental health assessment. Then the family court stated: "I'm going to order for the moment, just for the moment, that your visits be at the Butterfly House. . . . I can amend this order. You need to understand that. I don't like for people to freak out when I enter these because I can amend this. . . . I'm not doing anything with temporary custody today. Although I'm listing the children as protected persons. I'm just putting on here the Cabinet to investigate. Especially in light of the fact that the children were witnesses to all this." *Id.* at 12:01:03-12:02:45. The family court reiterated that it could amend the order quickly after the Cabinet investigated, Allison completed a mental health assessment, and the court was assured the children would be safe in Allison's care.

Subsequently, the family court entered a DVO for Gregory and the two minor children finding, based on a preponderance of the evidence, domestic violence occurred and was likely to occur again. The family court found Gregory

"was struck by [Allison] during an argument and hit in the head; all in the presence of the children." R. at 18. The DVO expires in June 2026.

The DVO restrained Allison "from committing further acts of abuse or threats of abuse, stalking, or sexual assault," and "from any unauthorized contact with [Gregory] or other protected person(s) named in this Order." R. at 17. Additionally, the order restrained Allison from any contact or communication with Gregory and the parties' two minor children. *Id.* However, the family court made an exception for Allison to "have supervised visits through The Butterfly House with the children." R. at 18. The DVO also ordered Allison to remain at least 500 feet away from Gregory and the children except when in the "courtroom/ courthouse" Allison could be within ten feet of them. *Id.* Allison was "restrained from disposing of, or damaging, any property of the parties and was required to vacate the parties' shared residence. R. at 19. The family court ordered the cabinet to investigate the temporary custody of the children. *Id.* The DVO required Allison to get a "mental health evaluation through Seven Counties," and a "28 week domestic violence assessment through Anderson Recovery." *Id.* Finally, Allison was restrained from owning, possessing, or accessing all weapons. *Id.*

On June 9, 2023, counsel filed a CR 59.05 motion to alter, amend, or vacate the DVO on Allison's behalf. Instead of filing a written argument, counsel

filed Allison's affidavit. In her affidavit, Allison argued that she initially deemed counsel unnecessary, but she retained counsel after the DVO was entered. R. at 22. She believed counsel could have advised her of her rights and aided her in presenting relevant testimony. *Id.* Allison argued she could present evidence that she is not a danger to her children. R. at 23. She also stated the DVO made no provisions for her to obtain belongings from the home given to her in the divorce settlement agreement. *Id.* Finally, she stated the petitioner failed to raise any allegations that domestic violence is likely to occur again. *Id.* Allison and Gregory are divorced, and she did not desire to have any contact with him. *Id.*

At the hearing, counsel for Allison raised three major issues, retrieving Allison's belongings from the marital residence, arrangements for the parties' pets, and the amending the DVO to remove the children. The parties agreed regarding Allison's belongings and the pets. Regarding the DVO, Allison completed a mental health assessment ordered by the court and had enrolled in DV classes. Allison asked the DVO to be amended to allow no unlawful conduct with the children and figure out a way for the parties to coparent through a third party and get to the parties' agreed timesharing schedule in the divorce case.

During the hearing, the Cabinet reported the findings from its investigation. The Cabinet worker stated, "the kids were present, but what they saw, they know about the slap, but they . . . didn't see it. They said that they were

-6-

in the vehicle and were unsure of what they had really seen. They were aware that dad was slapped." V.R. 6/28/23 at 11:21:37-55. The Cabinet worker further stated, "I know that they are very attached to Mom, and they have been very cooperative with me." V.R. 11:21:56-11:22:01. The Cabinet asked to be released from the case and stated it would do an aftercare plan with Allison.

Despite the Cabinet's report, the family court denied Allison's motion because Allison had only completed three classes and had not had time to review documents tendered by counsel. Instead, the court set a status conference "to discuss expansion of [Allison's] time with the children." V.R. 6/28/23 at 11:24:27-50. The family court told the parties they could share documents and agree to put them in the record. The court told counsel for Allison to email sensitive documents they would want to be sealed to her staff attorney a minimum of a week before the hearing. V.R. at 11:25:07-11:25:27.

On June 28, 2023, the family court entered an amended DVO memorializing the parties' agreements regarding Allison's belongings and the parties' pets. The family court amended the DVO "to allow [Allison] to retrieve personal provisions; and the parties have agreed to disperse pets and marital property." R. at 30. The family court ordered, "all other provisions shall remain in full force and effect." *Id.*

Allison did not appeal from the DVO.

On July 26, 2023, the family court held a status conference to discuss expansion of Allison's time with the children. Allison had completed six classes of her 28-week course. Counsel for Allison informed the court that she emailed the report from Allison's psychological evaluation and notes from visits at the Butterfly House to the family court's secretary. The family court stated, "You have to file things with the court. You don't email my staff." V.R. 7/26/23 at 11:54:25-29. The family court clearly forgot she told Allison to email the documents to her staff and had not reviewed them.

The family court determined that the parties would need a hearing regarding custody and timesharing in the divorce case and would not make a snap decision in the DV case. The court also determined that it was premature to remove the children from the DVO.

Ninety days later, on September 27, 2023, new counsel for Allison filed a motion for relief from the DVO under CR 60.02(a) and (f). The family court held a hearing on October 4, 2023. For the first time, Allison argued there was insufficient evidence to enter a DVO on behalf of the children. The family court took the matter under advisement.

On October 19, 2023, the family court entered an order denying Allison's CR 60.02 motion. The family court addressed Allison's two arguments: that the court "(1) failed to make proper findings under KRS 403.740(1) . . . , and

that (2) the evidence presented at the hearing does not support an order prohibiting unsupervised contact between [Allison] and the parties' children throughout the life of the DVO." R. at 66. First, the family court disagreed with Allison that it found an act of domestic violence had occurred but failed to find that domestic violence may occur again. The DVO form "was filled out accurately and in its entirety." *Id.* The family court checked the box finding "for Petitioner against Respondent in that it was established, by a preponderance of the evidence, that an act(s) of domestic violence and abuse has occurred and may occur again." *Id.* Thus, the family court concluded it made findings "in accordance with both prongs of KRS 403.740(1)." *Id.*

Second, the family court found that Allison struck Gregory and hit him in the head during an argument in the presence of the children. "Given the totality of the evidence, the [family court] decided that, for some time, supervised visitation between the children and [Allison] would be in the best interest of the children,[3] and it [stood] by that decision" in its order denying Allison's CR 60.02 motion. R. at 67. The family court opined that it would consider amending the DVO to allow Allison unsupervised contact with the children in the future or

---

[3] We must note that the best interest of the child standard, which applies in the child custody context and requires "complex and multi-faceted factual findings" does not apply in domestic violence cases. *Smith v. McCoy*, 635 S.W.3d 811, 817 (Ky. 2021). Instead, the preponderance of the evidence standard applies, which we discuss in our analysis below.

-9-

remove them from the DVO entirely at some point if it was in the children's best interests. *Id.* This appeal followed.

On appeal, Allison argues the family court erred in (1) granting the DVO for the children and only allowing supervised visitation with them for three years and (2) denying her CR 60.02 motion.

## STANDARD OF REVIEW

"Our standard of review of a trial court's denial of a CR 60.02 motion is whether the trial court abused its discretion." *Age v. Age*, 340 S.W.3d 88, 94 (Ky. App. 2011) (citing *Richardson v. Brunner*, 327 S.W.2d 572, 574 (Ky. 1959)).

> CR 60.02 relief is available as to DVOs, however, . . . CR 60.02 "is designed to provide relief where the reasons for the relief are of an extraordinary nature." *Ray v. Commonwealth*, 633 S.W.2d 71, 73 (Ky. App. 1982). A very substantial showing is required to merit relief under its provisions. *Ringo v. Commonwealth*, 455 S.W.2d 49, 50 (Ky. 1970). Our domestic violence and abuse laws have been carefully crafted to protect victims in as expeditious a manner as possible.

*Roberts v. Bucci*, 218 S.W.3d 395, 397-98 (Ky. App. 2007).

## ANALYSIS

Allison argues the family court erred in finding she may only have supervised visitation of the children at the Butterfly House for the next three years. Under this argument, Allison argues (1) the family court failed to make specific findings that an act of domestic violence may occur again, (2) the family court's

-10-

findings were clearly erroneous and unsupported by substantial evidence, and (3) application of Kentucky case law to the facts supports a finding that a DVO was improperly entered. Allison does not challenge the entry of the DVO with respect to Gregory.

Allison sought relief from the DVO under CR 60.02(a) for "mistake, inadvertence, surprise or excusable neglect" and CR 60.02(f) for "any other reason of an extraordinary nature justifying relief." "CR 60.02, is a safety valve, error correcting device for trial courts." *Hoffman v. Hoffman*, 500 S.W.3d 234, 237 (Ky. App. 2016) (quoting *Kurtsinger v. Bd. of Trustees of Kentucky Ret. Sys.*, 90 S.W.3d 454, 456 (Ky. 2002)). Allison argues the family court's DVO requiring that she may only have supervised visitation of the children at the Butterfly House for three years was an abuse of discretion.

CR 60.02(a) does not provide relief to Allison because it "cannot be used to correct judicial fact-finding errors or legal conclusions. *See Winstead v. Commonwealth*, 327 S.W.3d 479, 489 (Ky. 2010). Those type of errors are properly raised by appeal." *Hoffman*, 500 S.W.3d at 237.

However, Allison's arguments demonstrate that including the children as other protected persons in the DVO was an abuse of discretion so extraordinary as to justify relief under CR 60.02(f). Based on our review of the record, there was insufficient evidence to support entry of a DVO protecting the children.

-11-

"Following a full hearing, a court may grant a DVO, under KRS 403.750(1), 'if it finds from a preponderance of the evidence that an act or acts of domestic violence and abuse have occurred and may again occur[.]'" *Hamilton v. Milbry*, 676 S.W.3d 42, 46 (Ky. App. 2023) (quoting *Buddenberg v. Buddenberg*, 304 S.W.3d 717, 720 (Ky. App. 2010)). Under KRS 403.720(2)(a), "'Domestic violence and abuse' means (a) Physical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple[.]" (Emphasis added.) "Under the preponderance standard, the court must conclude from the evidence that the victim 'was more likely than not to have been a victim of domestic violence.'" *Buddenberg*, 304 S.W.3d at 720 (quoting *Commonwealth v. Anderson,* 934 S.W.2d 276, 278 (Ky. 1996)).

The family court fulfills its duty to "engage in at least a good faith effort at fact-finding and that the found facts be included in a written order" by fully and accurately complete[ing] AOC Form 275.3." *Smith v. McCoy*, 635 S.W.3d 811, 817 (Ky. 2021) (citation omitted). "Any additional factual findings the trial court makes in issuing a protective order are merely supporting those ultimate factual findings and are not 'essential.'" *Id.* Though the family court checked the box, finding an act of domestic violence occurred and may occur

-12-

again, its written supplemental findings in the form and evidence presented during the hearing do not support the entry of a DVO to protect the children.

The family court found that Gregory "was struck by [Allison] during an argument and hit in the head, all in the presence of the children." R. at 18. Though this finding supports the family court's decision to grant a DVO to protect Gregory, we cannot find that Allison's behavior meets the standard of granting a DVO with respect to the children. Gregory alleged the children were present when Allison struck him, but there was no allegation that Allison ever engaged in any conduct that presented any imminent danger to her children. Gregory did not allege Allison ever posed any danger to the children. Thus, the family court erred in including the children as other protected persons in the DVO.

Though Allison failed to argue the family court's factual findings as to the children were insufficient until her CR 60.02 motion, the family court further compounded its initial error by continuing to give Allison hope that it might entertain her motion to amend the order to contact with the children, refusing to hear Allison's arguments, ignoring documentation submitted by Allison, and, most significantly, ignoring the Cabinet worker's report. Though it would have been a best practice for Allison's counsel to file an appeal from the DVO, the family court made the procedure confusing by continually telling Allison it would entertain her motion to remove the children from the DVO at the next hearing and then refusing

to do so. Based on our review, Allison's only option to correct this egregious error was to seek relief under CR 60.02. Thus, based on our review of the family court's findings and applicable case law, the family court abused its discretion in failing to grant Allison's CR 60.02 motion under subsection (f).

Gregory asserts that Allison's arguments fail because she should have raised them in a direct appeal, but this Court has the power to correct errors of lower courts no matter the procedural posture of the case:

> In the exercise of its inherent power, an appellate court may decide an issue that was not presented by the parties so long as the appellate court confines itself to the record. *Priestley v. Priestley*, 949 S.W.2d 594, 59[6] (Ky. 1997). This power derives from an appellate court's supervisory authority over lower courts. KY. CONST. § 110(2)(a); and KY. CONST. § 111(2). Appellate jurisdiction "is the power and authority to review, revise, correct or affirm the decisions of an inferior court, and, more particularly, to exercise the same judicial power which has been executed in the court of original jurisdiction." *Copley v. Craft*, 341 S.W.2d 70, 72 (Ky. 1960).

*Gasaway v. Commonwealth*, 671 S.W.3d 298, 311-12 (Ky. 2023) (footnotes omitted).

We do not wield our supervisory authority lightly, but we must act when a family court enters "a DVO against the weight of the evidence" even when the matter comes to this Court on appeal of the denial of a CR 60.02 motion instead of on direct appeal. *Buddenberg*, 304 S.W.3d at 721 (citing *Wright v. Wright*, 181 S.W.3d 49, 523 (Ky. App. 2005)). Though our courts must protect

victims from domestic violence when supported by the evidence presented, this protection must be weighed against "the impact of having an EPO or DVO entered improperly, hastily, or without a valid basis can have a devastating effect on the alleged perpetrator." *Wright*, 181 S.W.3d at 52. For a family court to allow a petitioner to use our legal system "to 'win' the first battle of a divorce, custody, or criminal proceeding, or in order to get 'one-up' on the other party is just as offensive as domestic violence itself." *Id.*

## CONCLUSION

For the foregoing reasons, we vacate in part the DVO as pertains to all provisions regarding children as other protected persons, specifically the provision restraining Allison from any contact or communication with the minor children except "supervised visits through the Butterfly House." R. at 18. The provisions of the DVO pertaining to Gregory remain in effect.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Meryem Kalhoon
Louisville, Kentucky

BRIEF FOR APPELLEE:

Patrick F. Graney
Shelbyville, Kentucky