RENDERED:  JUNE 12, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0827-ME

SALMAN IQBAL                                                      APPELLANT

          APPEAL FROM JEFFERSON CIRCUIT COURT
v.           HONORABLE JESSICA STONE, JUDGE
          ACTION NO. 07-D-503793-002

ZAFRIN BEGUM SYED                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  A. JONES, KAREM, AND MOYNAHAN, JUDGES.

JONES, A., JUDGE:  Salman Iqbal appeals the extension of a domestic violence order ("DVO") against him and in favor of his former wife, Zafrin Syed, issued by the Jefferson Circuit Court, Family Division ("family court").  Following review of the record and applicable law, we affirm.

# I. BACKGROUND

This action is before us for a second time. In our prior Opinion, *Iqbal v. Syed*, No. 2024-CA-0595-ME, 2025 WL 728005 (Ky. App. Mar. 7, 2025) (hereinafter *Iqbal I*), we vacated the family court's March 7, 2024, order extending a previously entered DVO in Syed's favor. We concluded that Syed failed to properly serve Iqbal with notice of the hearing on her motion to extend the DVO, thereby depriving him of adequate notice and an opportunity to be heard. Accordingly, we remanded the matter "for a new hearing on the motion to extend the DVO with sufficient notice to both parties." *Id.* at *4.

Much of the relevant factual and procedural background concerning the parties was set forth in our prior Opinion, which we incorporate herein as follows:

> [The parties] were married on January 27, 2000, and share one child in common, who has reached the age of majority. On February 21, 2021, Syed filed for a [DVO] on behalf of herself and the parties' then-minor child. Following an evidentiary hearing, the Family Court issued a DVO on March 4, 2021, which was to be effective for three years and expire on March 4, 2024.
>
> While the DVO was in effect, the parties were involved in a separate civil action seeking a divorce. By entry of a Decree of Dissolution of Marriage ("Decree"), the parties were divorced on December 15, 2023 . . . . On the same day, the Family Court, in the civil action, also issued a separate order ("Final Order") memorializing the remaining matters, including the award of joint custody of the then-minor child to both

-2-

parties and assigning Iqbal as the primary residential custodian, with the agreement of Syed. The Final Order further required the DVO be amended to allow this arrangement. Contemporaneously, the Family Court amended the DVO on December 15, 2023, cross-referencing the civil action, to allow Iqbal contact with the parties' child. Record ("R.") at 61.

On February 27, 2024, Syed filed a Motion for Renewal of Current Order of Protection ("Motion to Extend"), noticed to be heard before the Family Court on March 7, 2024. R. at 71. . . .

On March 7, 2024, Syed, with counsel, appeared before the Family Court and provided sworn testimony of her ongoing concerns for her safety and desire to extend the DVO. Video Record ("V.R.") 3/7/24 at 9:10:32. Iqbal was not present. The Family Court granted Syed's Motion to Extend and expanded the DVO for another three years, for a period set to expire on March 6, 2027. R. at 77-79.

*Id.* at *1.

Following entry of our prior Opinion, Syed moved for a new hearing on April 29, 2025. The family court conducted an evidentiary hearing on May 29, 2025, which lasted approximately forty-five minutes. Iqbal appeared in person. Syed appeared remotely via Zoom and, with counsel present, was permitted to testify off camera.

Syed testified that she believed the DVO had protected her thus far, but that she feared for her safety if the order were allowed to expire. She recounted prior instances of domestic violence perpetrated by Iqbal and noted that

he possesses a black belt in martial arts. Syed further testified that, within the preceding ten days, Iqbal entered her home without permission while dropping off the parties' adult daughter. Although Syed stated that her home security system captured the incident, she did not introduce the video recording into evidence at the hearing. Syed additionally testified that Iqbal had fallen behind on his court-ordered maintenance obligations in the parties' dissolution action. She expressed concern that if she pursued contempt proceedings related to the unpaid maintenance, Iqbal might retaliate against her, and given his past behavior, she feared any such retaliation would be violent.

Iqbal testified in response. He denied entering Syed's home and asserted that Syed was being dishonest. He claimed that he routinely dropped off the parties' daughter approximately 500 to 1,000 feet from Syed's residence. According to Iqbal, on the day in question, he recorded a video on his cellular phone showing their daughter walking from his vehicle toward Syed's home. Although the family court afforded him time during the hearing to locate the recording, he was unable to produce it.

Iqbal also attempted to testify regarding statements allegedly made by Syed's father concerning Syed's mental health. Syed objected on hearsay grounds. Although Syed's father was not present in the courtroom, the family court offered Iqbal the opportunity to have him appear remotely via Zoom. Syed's

father declined to participate. Iqbal further asserted that the parties' adult daughter would corroborate his testimony. She likewise was not present at the hearing. The family court permitted Iqbal to attempt to contact her so she could join the Zoom proceedings, but he was unable to reach her. Iqbal also stated that he did not wish to involve the parties' daughter in the DVO proceedings, despite acknowledging that he had previously removed her from school to testify during earlier proceedings in the matter. Finally, Iqbal admitted that he was behind on his maintenance payments.

At the conclusion of the hearing, the family court orally ruled that the DVO would be extended. Its written calendar order stated:

> Ct heard proof. Pet + Resp testified. Ct found Pet more credible. Ct considered several factors including finding Resp violated current DVO, potential increased litigation out of parties cir case due to Resp failure to pay maintenance as ordered, and Pet reasons for still being in fear of Resp + Ct found Pet met burden to show there is a need to extend the DVO. DVO extension will remain in place. Ct adopts add' oral findings. Remand.

R. at 123.

Following entry of the order, Iqbal filed a motion to alter, amend, or vacate, attaching an affidavit from the parties' adult daughter and requesting permission to subpoena Syed's father. The family court denied the motion on June 20, 2025. This appeal followed.

-5-

## II. Briefing Deficiencies & Standard of Review

Iqbal proceeds in this appeal *pro se*. While we afford *pro se* litigants some latitude, they are nevertheless required to comply with the Kentucky Rules of Appellate Procedure ("RAP"). *Hallis v. Hallis*, 328 S.W.3d 694, 698 (Ky. App. 2010).

In the parties' prior appeal, we expressly noted that Iqbal's brief failed to comply with RAP 32 because it lacked citations to legal authority, references to the record, and preservation statements. *Iqbal I*, at *2. The same deficiencies persist here. Iqbal's brief contains no citations to the certified record and no preservation statements identifying where any alleged errors were presented to or ruled upon by the family court as required by RAP 32(A)(4).

These omissions substantially impede appellate review. It is not the function or responsibility of this Court to scour the record to determine whether an issue has been preserved. *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 53 (Ky. 2003). When an appellant fails to comply with the preservation requirements of RAP 32, this Court may review the appeal only for manifest injustice. *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021); *Hallis*, 328 S.W.3d at 696. Accordingly, because Iqbal has again failed to demonstrate preservation of his claims, we review this appeal solely for manifest injustice. "[M]anifest injustice" is error that "seriously affect[s] the fairness, integrity, or public reputation of

[judicial] proceeding[s]" and is "shocking or jurisprudentially intolerable." *Miller v. Commonwealth*, 283 S.W.3d 690, 695 (Ky. 2009) (internal quotation marks and citation omitted).

Before turning to Appellant's arguments, we must point out that the brief Syed's counsel filed on her behalf also does not fully comply with RAP 32(B). Among other deficiencies, it omits the required statement concerning oral argument, does not contain a counterstatement of points and authorities, does not include a counterstatement of the case in the form contemplated by the rule, and makes legal arguments that are not supported by any citations. While these shortcomings did not prevent our review of the issues presented, counsel is reminded that compliance with the Rules of Appellate Procedure is expected of all litigants, including those represented by counsel, and future violations by counsel could result in the imposition of sanctions.

### III. ANALYSIS

Iqbal's brief is not a model of clarity. However, he seems to be repeating much of what he attempted to tell the family court: that Syed lied during her testimony, he had their daughter's affidavit, and that Syed's father had lied in prior hearings. As we stated, he cited to no legal authorities. "Assertions of error devoid of any controlling authority do not merit relief." *Koester v. Koester*, 569 S.W.3d 412, 414 (Ky. App. 2019) (citations omitted).

If Iqbal believed Syed's father was dishonest during the initial hearings, he had opportunity to subpoena him and require that he show up. The same can be said for their daughter. The family court generously allowed him time to call them and have them testify. This was not Iqbal's first time in court, though that would not excuse his failure to call witnesses or properly prepare a defense. In fact, as the family court pointed out, Iqbal previously pulled his daughter out of school and had her present to testify. He was certainly aware of her need to be present, but changed course and stated he did not want to pull her into the conflict.

The family court, as the factfinder, is in the best position to judge the credibility of the witness. *Buddenberg v. Buddenberg*, 304 S.W.3d 717, 720 (Ky. App. 2010); *Williford v. Williford*, 583 S.W.3d 424, 429 (Ky. App. 2019). Ultimately, it found Syed more credible. The family court's oral findings illustrate its thought process. It noted that Iqbal was unable to find the video of his daughter walking from ten days ago. It also noted that Iqbal previously had no qualm pulling his daughter out of school to testify, but now did not want to bring his daughter into the conflict. It further stated it had reviewed the basis for the original DVO. Iqbal was the perpetrator, and it believed Iqbal had recently been in Syed's home without permission. Given Iqbal's past behavior, it was also concerned that the anticipated increased litigation between the parties could escalate into violence.

We also note that additional acts of domestic violence are not required to extend a DVO under KRS[1] 403.740(4). *Cottrell v. Cottrell*, 571 S.W.3d 590, 592 (Ky. App. 2019). A family court may consider the nature, extent, and severity of the original acts of domestic violence in determining whether an extension is necessary, and may extend a DVO even in the absence of more recent acts of domestic violence. *Id.*

## IV. CONCLUSION

Discerning no manifest injustice, we affirm the family court's order extending the DVO.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Salman Iqbal, *pro se*<br>Prospect, Kentucky | Dr. Mary A. Stoddard<br>Louisville, Kentucky |

---

[1] Kentucky Revised Statutes.