RENDERED: MARCH 6, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0262-ME

DANIEL KANABROSKI                                               APPELLANT

v.                  APPEAL FROM JEFFERSON CIRCUIT COURT
FAMILY COURT DIVISION
HONORABLE DERWIN L. WEBB, JUDGE
ACTION NO. 24-D-502207-001

DANA KANABROSKI; C.K., A
MINOR CHILD; AND L.K., A MINOR
CHILD                                              APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: ECKERLE, A. JONES, AND TAYLOR, JUDGES.

JONES, A., JUDGE: Appellant, Daniel Kanabroski ("Father"), appeals from a
domestic violence order ("DVO") entered by the Jefferson Family Court on behalf
of the parties' two minor children, C.K. and L.K. (collectively, the "Minor
Children"). The DVO forbids Father from having any contact with the Minor

Children for three years. Father does not challenge the DVO entered in favor of Dana Kanabroski ("Mother").[1]

Although the family court cited correct legal principles, it failed to make written findings supported by substantial evidence that the Minor Children experienced domestic violence or were placed in fear of imminent physical injury as required by KRS[2] 403.720 and KRS 403.740, and the evidence was insufficient as to the Minor Children to support any such findings. Accordingly, the portion of the DVO entered on behalf of the Minor Children must be reversed and this matter remanded for entry of an order consistent with this Opinion.

## I. BACKGROUND

Mother and Father were married for approximately eleven years.[3] They have two minor children: C.K., born in 2015, and L.K., born in 2016. In addition, Mother has three older children from a prior relationship: Evan,

---

[1] As discussed more fully below, the Minor Children are represented by a guardian *ad litem* ("GAL"), Rebecca Smither. The record reflects that the Minor Children are parties to this appeal and that the GAL was served with the notice of appeal and all other relevant filings, notices, and orders. While Mother's counsel filed an appellee brief urging affirmance of the DVO, the GAL did not file a brief on behalf of the Minor Children and has taken no position in this appeal.

[2] Kentucky Revised Statutes.

[3] Mother and Father were legally married when Mother commenced this action. Later, the parties filed for dissolution of their marriage. The dissolution proceedings are not part of the record before us.

Matthew, and Emma (collectively, the "Stepchildren").[4]  On June 20, 2024, Mother

filed a petition for an order of protection alleging that Father had engaged in a

pattern of verbal, emotional, and physical abuse toward her and the Stepchildren,

including certain physical altercations, at least one of which occurred in the Minor

Children's presence.  Specifically, Mother alleged that on June 20, 2024,

> [Father] verbally and physically assaulted my 18-year-old
> daughter [Emma] this evening.  When she tried to come
> in from the deck after he threw her bedding which was in
> the washer outside and she went to retrieve it and when
> returning back in she opened door [sic] and he literally
> was using the door as a weapon to push it on her hard
> where she was pinned between the door frame with half
> of her body in the house and half of her body still on the
> deck.  Emma (my daughter) had to push the door back so
> it wouldn't smash her between the frame and the door.
> [Father] was continuing to push the door as if he was
> trying to slam it against her.  I called 911[,] and that is
> when Emma was finally able to come fully into the
> house.  He then called 911 to file his police report again
> [sic] Emma since he said I called[,] he had the right to
> call them.  Before the police arrived[,] he told me[,] "we
> don't have to do it this way, I will just take the boys (we
> have 9yr and 7yr biological sons together) and we will
> leave you["].  He said if you have the police come[,] I
> will make sure Emma goes to jail, because she is an
> adult.  The police arrived[,] and he somehow showed that
> he had injuries from the door he was literally slamming
> on Emma[,] and she was trying to keep it off her.  The

---

[4] Mother initially sought protection for herself and the five children.  Evan and Matthew were later dismissed.  An emergency protective order ("EPO") was entered on Emma's behalf, but was allowed to expire without entry of a DVO because she was attending school in New York.  The final order of protection entered by the family court provided protection only for Mother and the Minor Children.  And, as already stated, this appeal challenges only the provisions of the order providing protection to the Minor Children.

police asked Emma if she wanted to file a report and[,] then he said he wanted to do the same. He has had years of this type of behavior against me, [sic] my 19-year-old twin sons that are also his stepsons. In fact, a few years ago[,] he was taken into custody for choking one of my sons (his stepson Evan) over a set of car keys. He has been taking money out of my bank account that is my name only and my retirement plans too[,] without my permission. He has lied about taking money from me to use for gambling addictions and[,] he has not paid [the] mortgage to allow my home to go into foreclosure, when he was tasked with paying the household bills. He has trapped me into [sic] my bathroom [on] several occasions and blocked the door so I couldn't leave. I have asked him to leave several times[,] and he said the only way he is leaving is to take our boys and that I would never see them again. He records everyone in the house when he has verbally abused us[,] or when I tell him he needs to leave he pulls out [his] phone and threatens me with saying that he will use whatever he needs to take the children away from me. He calls my daughter a [c**t] said she is anorexic, calls me a whore in front of all the children. He has done this verbal, emotional, physical[,] and financial abuse for years and[,] my fear is that he will do something to me if I do leave, I have wanted to leave for years[,] but he has made me believe things would continue to improve but[,] they have not and are escalating. He told my daughter after she said that she hated living at the house with him[,] that he could find a way to get rid of her. He has [sic] spent time in prison in 2013 for a Class C Felony for using a forged instrument, bad check. At that time[,] it was the beginning of him taking money from me and lying about it[,] and unfortunately[,] I trusted he was telling the truth. He will be remorseful[,] and then he will do something to me or the older children that continues to become more and more violent. He has literally put his hands on my 3 older children and me and blames us[,] and when one of us tries to defend ourselves[,] he turns the tables on us

-4-

and said [sic] we are the problem and have mental issues, we are crazy. Today was the last straw, my daughter did absolutely nothing to provoke the actions of today[,] and he preyed on her.

(Record ("R.") at 1-2). In response, the family court entered an EPO, which included, among other things, a provision prohibiting Father from having any contact with the Minor Children.

On July 25, 2024, the family court entered an agreed-amended order modifying the EPO as to the Minor Children. The amended order permitted Father to call and text the Minor Children and to exercise scheduled, unsupervised visitation with them three times per week. The no-contact provision remained in effect as to Mother, except that the parties were permitted to be within 500 feet of one another for the Minor Children's extracurricular activities and visitation exchanges, so long as Father did not speak to or interact with Mother. Both parties were further ordered not to disparage one another in the presence of the Minor Children and not to discuss adult matters, including the domestic violence action, the pending dissolution proceedings, or issues relating to parenting time or custody, in front of the Minor Children. The matter was continued to December 10, 2024, with the understanding that the EPO would be dismissed as to Mother and the Minor Children if no violations or issues occurred in the interim.

On October 1, 2024, Mother filed a motion requesting that the family court vacate the agreed-amended EPO and reinstate the original no-contact EPO. In her motion, Mother alleged that after entry of the amended order, Father's "behavior has been problematic and has actively harmed the Minor Children."

Mother asserted that Father excessively called and texted the Minor Children, questioned them about their activities, whereabouts, persons present in Mother's home, and Mother's activities while she was exercising her parenting time, and generally disparaged Mother to the Minor Children. She further alleged that Father violated the amended order by causing multiple issues at the Minor Children's extracurricular activities, including making comments to and around Mother, harassing third parties who attended the events with Mother, and requiring the Minor Children to change clothes at events for the purpose of leaving Mother alone with Father. Mother also alleged that Father repeatedly contacted the Minor Children's school and disparaged her to school personnel.

Mother maintained that it was in the Minor Children's best interests for the EPO to be amended to a no-contact order with no exceptions and requested that the family court hear the matter on December 10, 2024.

On December 17, 2024, the family court conducted a combined evidentiary hearing on Mother's motion to vacate the agreed-amended EPO and on whether to enter a domestic violence order. Father acknowledged in his appellate

brief that the family court addressed the two matters together rather than sequentially and further acknowledged that neither party objected to that procedure. During the combined hearing, the family court heard testimony from the Minor Children's school principal, Dr. Nathan Sturtzel; Mother; Father; one of the Minor Children's football coaches, Luke Haire; and Mother's daughter, Emma.[5]

Dr. Sturtzel testified primarily regarding Father's repeated contacts with the Minor Children's school and his concerns that Father's conduct was disruptive to school operations and that his interactions with the school were not in the Minor Children's best interests because it put them at risk of being dismissed from the school.

Mother testified concerning Father's alleged violations of the amended EPO, including excessive calls and texts to the Minor Children, questioning them about their activities, whereabouts, and Mother's conduct during her parenting time, and generally disparaging Mother to the Minor Children. She also testified regarding Father's conduct at the Minor Children's extracurricular activities and his repeated contacts with school personnel. She testified she had

---

[5] We have reviewed the entire record. However, in summarizing the evidence, we have included only the testimony most relevant to the Minor Children and have omitted testimony unrelated to them, including allegations of abuse that Mother asserts Father committed outside the presence of the Minor Children.

observed Father filming her and the Minor Children in a parking lot. She further testified that on another occasion Father drove closely behind her while she was traveling on a winding, narrow road with the Minor Children in the vehicle. According to Mother, Father would sometimes drive in front of or behind her following parenting time exchanges and, on occasion, would cut her off while she had the Minor Children in the car.[6]

Most notably, Mother testified that the Minor Children witnessed a prior physical altercation between Father and one of the Stepchildren, Evan. That incident occurred in a common area of the home in 2022. According to Mother, Evan had been assigned chores, but she allowed him to complete his homework before doing them. When Father returned home, an argument ensued between Father and Evan concerning Evan's failure to complete his chores. As punishment, Father demanded that Evan surrender his car keys. When Evan tossed the keys toward Father, Father flipped Evan onto a futon, placed both hands around his neck, and choked him.

Mother testified that Father had harmed each of the Stepchildren at different times and that she had observed what she described as a pattern of

---

[6] During Father's cross-examination, Mother's counsel played a dash camera video depicting a vehicle closely following Mother's vehicle and then passing her on a double yellow line. Father denied that he could identify the vehicle or the license plate as his. The video was played on a cellular telephone and viewed by the family court but was not admitted into evidence and is not part of the record on appeal.

targeting them one by one.  She further testified that she feared it was only a matter of time before Father would treat the Minor Children similarly and that his constant phone calls and text messages to them constituted emotional abuse.

Father denied physically abusing or threatening the Minor Children and disputed Mother's characterization of his conduct.  He acknowledged a confrontation with Emma but testified that he did not assault her.[7]

The Minor Children's football coach, Luke Haire, testified that he did not personally observe Father acting inappropriately toward Mother or the Minor Children when they were at practices or games, but that he was more focused on the games than the bystanders.

Emma testified regarding the confrontation that occurred between herself and Father on June 20, 2024.  Her testimony was consistent with the allegations in Mother's petition.

At the conclusion of the evidence, Father moved for a directed verdict, arguing that Mother had failed to present sufficient evidence that domestic violence had occurred toward the Minor Children.  Thereafter, the family court entered a domestic violence order in favor of Mother.  As to the Minor Children,

---

[7] No testimony established that either Minor Child was present during the later confrontation between Father and Emma, which occurred on June 20, 2024.

the court took the matter under submission to allow it time to review the case law cited by the parties. No oral findings are contained in the video record.

On December 18, 2024, the family court entered a handwritten order extending the no-contact DVO to include the Minor Children and denying Father's motion for a directed verdict. Citing *Crabtree v. Crabtree*, 484 S.W.3d 316 (Ky. App. 2016), the court stated that "acts of domestic violence committed in close proximity to the child may be sufficient to establish a risk of imminent harm to the child" and concluded, "the Court includes the children in the DVO."

Father filed a motion to alter, amend, or vacate the DVO. The family court heard arguments of counsel on February 7, 2025. Later, the court denied the motion. The order did not incorporate any oral findings, and no amended order was entered.

This appeal followed.

## II. GAL'S FAILURE TO FILE AN APPELLATE BRIEF

When a domestic violence order is sought on behalf of minor children, the family court is required to appoint a GAL to represent the children's interests if the court orders an evidentiary hearing under KRS 403.730(1)(a). KRS 403.727. The family court complied with this requirement and appointed Attorney Rebecca Smither as GAL for the Minor Children. A GAL is the child's agent and bears responsibility for advancing the child's interests through motions, evidence, and

legal argument on the child's behalf. *Smith v. Doe*, 627 S.W.3d 903, 915 (Ky. 2021).

Under our Rules of Appellate Procedure ("RAP"), the Minor Children are parties to this appeal. RAP 2(A)(2) provides that "[u]pon timely filing of the notice of appeal from a final and appealable order on all claims in an action, all parties to the proceedings from which the appeal is taken, except those who have been dismissed in an earlier final and appealable order, shall be parties before the appellate court." The Minor Children were listed as parties on the notice of appeal, and GAL Smither was included in the certificate of service.

Despite this, the GAL did not enter an appearance in this Court and did not file an appellee brief on behalf of the Minor Children. While Mother's counsel filed an appellee brief advocating that the domestic violence order be affirmed, the GAL did not request to join in Mother's brief or otherwise take any position in this appeal.

The absence of any participation by the GAL during this appeal is troubling. The findings under review concern whether domestic violence occurred toward the Minor Children and whether they were placed in fear of imminent physical injury. Those questions directly implicate the Minor Children's interests and are distinct from the interests of either parent. This is precisely why the General Assembly requires the appointment of a GAL in domestic violence

proceedings involving children, particularly in emotionally charged family disputes where parents may sincerely but differently believe they are acting in the child's best interests.

Unfortunately, this case is not an anomaly. GALs rarely participate in the appellate process even when the interests of the children they represent are directly at stake. However, GALs can and should be active participants in appeals. At a minimum, GALs should notify this Court whether they adopt the position of one of the parties. The failure to do so deprives the Court of the neutral, child-centered perspective that the statutory scheme contemplates.

When an appellee fails to file a brief, this Court may: (i) accept the appellant's statement of the facts and issues as correct; (ii) reverse the judgment if the appellant's brief reasonably appears to support such action; or (iii) treat the failure as a confession of error and reverse without reaching the merits. RAP 31(H)(3). The choice among these remedies lies within our discretion. *Lankford v. Lankford*, 688 S.W.3d 536, 537 n.1 (Ky. App. 2024).

In this case, we decline to impose any of the remedies authorized by RAP 31(H)(3). Given the seriousness of domestic violence orders and the fact that Mother filed an appellee brief, we elect to review this matter on the merits.

Nevertheless, we take this opportunity to remind the bar that minor children in domestic violence proceedings are separately represented parties, and a

brief filed by one parent is not a substitute for representation by the GAL. Here, each parent purports to seek relief that they believe is legally supported and in the Minor Children's best interests. That circumstance is not unusual in domestic violence cases and is precisely why independent representation by a GAL throughout the appellate process is critical.[8]

### III. PRESERVATION OF ERROR

Father raises four issues on appeal: (1) whether the agreed-amended emergency protective order is binding on the parties; (2) whether a petitioner must offer factual proof of harm to support the entry of a domestic violence order on behalf of minor children; (3) whether the family court was required to make specific findings of fact in support of its order; and (4) whether constitutional concerns arise when a domestic violence order restricts a parent's contact with his or her children.

RAP 32(A)(4) requires that an appellant's brief contain, at the beginning of *each* argument, "a statement with reference to the record showing whether *the issue* was properly preserved for review and, if so, in what manner." RAP 32(A)(4) (emphasis added). "Obviously, a party should provide preservation

---

[8] We recognize that compensation for GAL services is capped at $500, a sum likely below market value. However, a brief need not be extensive, and a GAL remains free to request the Court to join in the brief of another party if the GAL agrees with that party's arguments. The essential point is that the GAL represents the child, and the child's interests remain at stake when a domestic violence order is appealed.

statements for each issue it wishes this Court to address." *W.I.S. v. K.M.B.*, 722 S.W.3d 569, 577 (Ky. App. 2025).

The purpose of the preservation requirement is to assure the reviewing court that "the issue was properly presented to the trial court[,] and therefore, is appropriate for . . . consideration." *Cotton v. NCAA*, 587 S.W.3d 356, 360 (Ky. App. 2019) (quoting *Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012)). While this procedural rule preserves judicial resources, it also serves an important substantive purpose because the fact and manner of preservation generally determine the applicable standard of review. *Id.* It is neither the function nor the responsibility of this Court to scour the record to ensure an issue has been properly preserved for appellate review. *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 53 (Ky. 2003).

Father's appellant brief contains a single omnibus preservation statement on page six, which purports to preserve all issues raised in the brief. Father states: "All matters related to the Domestic Violence Order were preserved at the hearing. Trial counsel for the Appellant argued and moved for a directed verdict based on lack of evidence. *See* [Video Record ("VR")] at 12/17/2024 9:38:35." Father further notes that counsel filed a timely motion to alter, amend, or vacate the DVO on December 23, 2024.

-14-

This omnibus statement establishes preservation only of Father's argument that the evidence was insufficient to support entry of a domestic violence order as to the Minor Children. It does not identify where in the record the three remaining issues raised in Father's brief were presented to the family court, nor does it explain how those issues were preserved.

"If a party fails to inform the appellate court of where in the record his issue is preserved, the appellate court can treat that issue as unpreserved." *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021). Moreover, "the obligation to provide [preservation] information belongs to the party submitting the brief." *Couch v. Commonwealth*, 686 S.W.3d 172, 182 (Ky. 2024). When a party fails to comply with this requirement and does not request palpable error review, appellate review of those issues is waived. *Id.*

Here, Father did not request palpable error review. Our independent review of the record reveals no instance in which Father raised the additional issues asserted in his brief before the family court. Given Father's failure to identify where those issues were preserved and our inability to locate any such preservation in the record, we limit our review to the sole issue that was properly preserved, namely, whether sufficient evidence supported the entry of a domestic violence order as to the Minor Children.

-15-

## IV. WHETHER SUFFICIENT EVIDENCE SUPPORTED THE ENTRY OF A DOMESTIC VIOLENCE ORDER AS TO THE MINOR CHILDREN

KRS 403.740(1) provides that a court may issue a domestic violence order if, after conducting a hearing in accordance with KRS 403.730, the "court finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur[.]" "Domestic violence and abuse" are defined as "[p]hysical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple[.]" KRS 403.720(2)(a); *see also Pettingill v. Pettingill*, 480 S.W.3d 920, 924-25 (Ky. 2015). "The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence." *Johnston v. Johnston*, 639 S.W.3d 428, 431 (Ky. App. 2021) (quoting *Caudill v. Caudill*, 318 S.W.3d 112, 114 (Ky. App. 2010)). A domestic violence order, however, "cannot be granted solely on the basis of the contents of the petition." *Rankin v. Criswell*, 277 S.W.3d 621, 625 (Ky. App. 2008).

In addition to requiring evidentiary proof, our rules require that trial courts make specific findings of fact to support their legal conclusions. CR[9] 52.01

---

[9] Kentucky Rules of Civil Procedure.

-16-

provides: "In all actions tried upon the facts without a jury . . . , the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment." It is the duty of the court to make brief, definite, and direct findings and conclusions upon determinative matters arising in the controversy.

Trial courts often blur the distinction between conclusions of law and factual findings. They are not interchangeable, and one is not a substitute for the other. A factual finding identifies what occurred. A legal conclusion determines whether those facts satisfy a statutory standard. For example, a factual finding would state that a parent shoved a child or raised a fist in the child's presence. A legal conclusion would state that such conduct constituted domestic violence or placed the child in fear of imminent physical injury under KRS 403.720.

Our review of a domestic violence order is governed by two complementary standards. We review a family court's findings of fact under the clearly erroneous standard, giving due regard to the court's opportunity to judge the credibility of the witnesses. CR 52.01. A finding is not clearly erroneous if it is supported by substantial evidence. "Substantial evidence" means "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998). Whether the facts found by the court satisfy the

statutory definition of domestic violence and abuse is a question of law, which we review *de novo*. *Pettingill*, 480 S.W.3d at 925.

With these principles in mind, we consider whether the evidence and findings support the entry of a domestic violence order protecting the Minor Children.

There was no evidence that Father ever struck the Minor Children or otherwise physically or sexually abused them. There was likewise no evidence that Father made threats of physical violence directed at the Minor Children or that he engaged in conduct toward them that placed them in fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault as defined by KRS 403.720(2)(a).

Mother's testimony concerning the Minor Children focused primarily on Father's conduct during the parties' separation and parenting time exchanges. Specifically, Mother alleged that Father excessively called and texted the Minor Children, questioned them about their activities and whereabouts, inquired about individuals present in Mother's home, and asked about Mother's conduct during her parenting time. Mother further testified that Father disparaged her to the Minor Children and repeatedly contacted the Minor Children's school in a manner that, according to Mother, led school personnel to express concern that the children could be dismissed from the school.

These allegations, if true, reflect conflict between the parents and poor boundaries in co-parenting. They may be relevant in the context of a custody or timesharing proceeding and could support restrictions on communication or conditions on visitation. However, such conduct does not constitute domestic violence or abuse as defined by KRS 403.720(2)(a). The statute requires proof of physical injury, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury or similar harm. Repeated phone calls, disparaging remarks, and intrusive questioning, while troubling, do not meet that statutory threshold.

The only evidence Mother offered that arguably warrants further analysis is her testimony concerning an alleged physical altercation between Father and one of the Stepchildren, Evan, which she contends occurred in the family home in 2022 and in the presence of the Minor Children. According to Mother, Father became angry with Evan over chores, demanded Evan's car keys, and when Evan tossed the keys toward him, Father flipped Evan onto a futon and placed his hands around Evan's neck. Mother testified that the Minor Children witnessed this incident.

Kentucky appellate courts have recognized that, in limited circumstances, acts of domestic violence committed against a third party and witnessed by a child may support the entry of a domestic violence order on behalf

of that child. However, those cases also emphasize that such findings must be grounded in evidence that the child was placed in fear of imminent physical injury or that the conduct created a present and continuing risk of harm.

In *Buddenberg v. Buddenberg*, 304 S.W.3d 717 (Ky. App. 2010), the family court declined to enter a domestic violence order on behalf of the parties' children despite evidence that the father had engaged in disturbing and inappropriate conduct involving other minors. The record showed that the father had sent inappropriate text messages to a thirteen-year-old girl, had previously been terminated from employment for viewing pornography and communicating with juvenile girls online, and had admitted to inappropriate contact with his sisters decades earlier. *Id.* at 720-21. Although acknowledging that the mother had legitimate concerns about the father's behavior, this Court affirmed the denial of a DVO as to the children because there were no allegations that the father had ever engaged in inappropriate conduct toward his own daughters or that his conduct had placed them in fear of imminent physical injury or sexual abuse. *Id.* at 721. The Court explained that "[a]ny long-term risk that Everett may offend with his own children would be better addressed as part of the custody proceedings in the dissolution action[,]" rather than through a domestic violence order. *Id.* Thus, *Buddenberg* makes clear that troubling conduct directed at others, even children,

does not satisfy KRS 403.720(2)(a), absent proof that the respondent's conduct created an imminent danger or fear of harm to the children at issue.

In *Crabtree*, 484 S.W.3d 316, this Court affirmed the entry of a domestic violence order protecting a child where the evidence demonstrated extreme and volatile conduct by the father toward the mother, including physical assaults and threats of suicide involving a firearm. Although the opinion does not indicate that every act occurred directly in the child's immediate presence, the record supported the conclusion that the father's conduct created an atmosphere of fear and instability within the household that placed the child at risk of imminent harm. The Court's analysis rested on the cumulative nature and severity of the conduct and the resulting danger to the child, rather than on the mere fact that a child may have witnessed a single incident. *Crabtree* also focused heavily on the Father's threat to commit suicide in the family's presence, which the Court determined was inherently fear invoking.

*Crabtree* therefore stands for the principle that, under certain circumstances, domestic violence directed toward another household member may constitute domestic violence as to a child when the surrounding facts demonstrate that the child was placed in fear of imminent physical injury or exposed to an ongoing environment of violence and danger. It does not establish a rule that any

-21-

isolated act of violence witnessed by a child automatically satisfies the statutory definition of domestic violence and abuse under KRS 403.720(2)(a).

Since *Crabtree* was decided, most cases citing it have arisen in the unique context of suicide threats or the use of firearms, circumstances this Court has recognized as particularly terrorizing to family members and capable of creating an imminent risk of physical harm within the household. *See, e.g.*, *Bowen v. Bowen*, No. 2021-CA-0098-ME, 2021 WL 3008768, at *3 (Ky. App. Jul. 16, 2021) (suicide threat coupled with menacing conduct involving a firearm); *Hex v. Larimer*, No. 2020-CA-1544-ME, 2021 WL 2878376, at *2 (Ky. App. Jul. 9, 2021) (suicide threats and volatile behavior); *Mullins v. Swarts*, No. 2016-CA-000464-ME, 2016 WL 7406694, at *2 (Ky. App. Dec. 22, 2016) (shots fired inside the home).[10] These cases underscore that *Crabtree* has been applied primarily where the conduct was extreme, destabilizing, and reasonably created an imminent fear of physical injury.

Most recently, in *Ghanim v. Ghanim-Moustafa*, No. 2024-CA-1462-ME, 2025 WL 3126020 (Ky. App. Nov. 7, 2025), we addressed circumstances strikingly similar to those presented here.[11] In *Ghanim*, the evidence demonstrated

---

[10] We cite these unpublished opinions for illustrative purpose only, fully recognizing that they are not binding on the Court. RAP 41.

[11] Again, we cite this unpublished opinion for illustrative purposes only and not as binding precedent. RAP 41.

that the father had repeatedly pushed, shoved, and pinned the mother to the floor during domestic disputes. The mother testified that the parties' child witnessed at least one altercation where the father had pinned her to the ground, and that the child became upset. However, the child did not testify. *Id.* at *6-7. Although acknowledging that acts of domestic violence committed in close proximity to a child may support a finding of imminent risk in some circumstances, the panel emphasized that the statute still requires proof that domestic violence occurred or may occur as to the child, not merely as to another family member. *Id.* at *7-8. Critically, the family court in *Ghanim* made no finding that the father's conduct inflicted fear of imminent physical injury upon the child, nor did it find that domestic violence had occurred or may occur again with respect to the child. *Id.* at *8.

We therefore reversed the "no violent contact" provision entered on the child's behalf, reasoning that the record lacked evidence of threats or abuse directed toward the child and lacked proof that the child experienced fear of imminent physical injury. *Id.* Importantly, the panel noted that while exposure to parental conflict is troubling and may properly inform custody or timesharing determinations, it does not automatically satisfy the statutory definition of domestic violence as to the child. It then cautioned against collapsing proof of

violence toward one parent into a *per se* showing of domestic violence toward a child without evidence of fear or a threat directed at that child. *Id.* at \*7-9.

By contrast, in *Varner v. Varner*, No. 2025-CA-0886-ME, 2025 WL 3683282 (Ky. App. Dec. 19, 2025), this Court affirmed the entry of a domestic violence order protecting both the mother and the parties' minor children where the evidence demonstrated repeated violent conduct occurring in the children's presence and proof that at least one child suffered emotional trauma as a result.[12] In *Varner*, the petitioner presented extensive testimony regarding an escalating and chaotic environment in the home. She testified that the father frequently carried a firearm while arguing, left guns and ammunition scattered throughout the residence, damaged property, threw objects, punched holes in walls, and engaged in volatile outbursts in front of the children. The evidence further showed that the father secretly recorded the mother without her knowledge, returned to her home uninvited at night, and made statements reflecting an intent to seek "payback." *Id.* at \*2-3. Most significantly, the evidence in *Varner* included proof that the father's conduct directly impacted the children. The mother testified that the violent behavior occurred in front of them and that one child required therapy for approximately one year as a result of the trauma caused by the home environment.

---

[12] We cite this unpublished opinion for illustrative purposes only and not as binding precedent. RAP 41.

The father acknowledged that his conduct was "probably very scary for the child" and conceded that it contributed to the child's emotional distress. *Id.* at *4. Based on this evidence, the trial court expressly found that the father's conduct inflicted fear of imminent physical injury upon the children and that domestic violence and abuse had occurred and may occur again as to them. *Id.*

In affirming the DVO, the panel emphasized that a family court may draw reasonable inferences from the evidence, including the inference that a parent's repeated violent and destabilizing conduct in the home produced fear of imminent physical injury in a child. *Id.* However, the decision rested not merely on the fact that the children witnessed conflict, but on the combination of ongoing violent behavior, use of firearms, professional testimony, and evidence of actual emotional harm suffered by a child.

Together, *Ghanim* and *Varner* illustrate the critical distinction required by KRS 403.720 and KRS 403.740. In *Ghanim*, although the child witnessed an incident of violence between the parents, the record lacked evidence that the child experienced fear of imminent physical injury or that domestic violence occurred or may occur again as to the child. In *Varner*, by contrast, the evidence demonstrated a continuing pattern of violent conduct in the children's presence and concrete proof that at least one child was emotionally traumatized by that conduct.

Reading the case law together confirms that while acts of domestic violence committed in close proximity to a child may, in appropriate circumstances, support a DVO on the child's behalf, the statute still requires evidence and findings tethering the conduct to fear or risk of harm to the child. Mere exposure to parental or other intrafamily conflict, without proof of fear of imminent injury or impact on the child, is insufficient.

Here, Mother testified that in 2022, Father physically assaulted one of the Stepchildren, Evan, in the family home and that at least one of the Minor Children witnessed that incident. While this testimony is concerning and properly considered by the family court, the record contains no evidence that this incident caused either Minor Child to fear that Father would inflict physical violence upon them. Mother did not testify that the Minor Children were experiencing continuing fear of Father as a result of that event. Instead, her testimony focused primarily on Father's recent behavior of repeated phone calls, text messages, questioning, and interference with school activities, which she believed was emotionally harmful to the Minor Children. Likewise, the school principal's testimony addressed disruption caused by Father's conduct at school, not fear experienced by the Minor Children.

Additionally, the Minor Children did not testify, and no counselor, pediatrician, social worker, psychiatrist, or other professional testified that either

-26-

child exhibited fear or trauma related to the 2022 incident. This is not to suggest that such expert testimony is required in every domestic violence proceeding. It is not. But where the statutory basis for a DVO rests on the infliction of fear of imminent physical injury, there must be some evidence that such fear actually existed. To hold otherwise would effectively establish that any child who witnesses or is merely in proximity to domestic violence against another family member, however remote in time, automatically qualifies as a victim of domestic violence. The statute does not so provide, and had the General Assembly intended such a result, it could have included that language.

At best, by implication, the family court's order finds that the Minor Children were present when an act of domestic violence was inflicted on Evan some two years prior. But it certainly does not contain any finding that the Minor Children were placed in fear of imminent physical injury by Father's conduct or that Father was likely to inflict domestic violence on the Minor Children in the future.

"The family court's failure to make a finding of a physical injury, past or present physical threats of abuse, or fear of imminent harm, wholly undermined its decision to grant the DVO." *Petrie v. Brackett*, 590 S.W.3d 830, 836 (Ky. App. 2019). While this Court could remand the matter for additional findings, doing so would be an exercise in judicial futility. The evidentiary record contains no

-27-

testimony from which the family court could reasonably make a finding that the Minor Children experienced fear of imminent physical injury. Mere exposure to parental conflict or domestic violence inflicted on other family members, without proof of fear of imminent injury or actual impact on the child, is insufficient.

The family court remains free to consider the evidence presented in determining custody, timesharing, and visitation arrangements under KRS 403.270 and KRS 403.320. But the statutory requirements for entry of a domestic violence order on behalf of the Minor Children were not met in this case. Accordingly, that portion of the domestic violence order extending protection to the Minor Children must be reversed.

## V. CONCLUSION

For the foregoing reasons, we reverse and remand this matter to Jefferson Family Court, with instructions to vacate the DVO entered on behalf of the Minor Children.

ECKERLE, JUDGE, CONCURS.

TAYLOR, JUDGE, CONCURS IN RESULT ONLY.

BRIEF FOR APPELLANT:

John H. Helmers
Melina Hettiaratchi
Louisville, Kentucky

BRIEF FOR APPELLEE DANA
KANABROSKI:

Katie M. Brophy
Louisville, Kentucky

NO BRIEF FILED FOR C.K, A
MINOR CHILD AND L.K., A
MINOR CHILD.